IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RYAN L LANEY, ) | |
| ) | |
| Debtor-Appellant, ) | |
| ) | |
| vs. ) | Case No. 20-cv-1312-DWD |
| ) | Bk. Case No. 19-40789 |
| SECOND CHANCE AUTO, INC, ) | |
| ) | |
| Creditor-Appellee. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This is an appeal from the bankruptcy court's November 23, 2020 order overruling Debtor Ryan Laney's Objection to Creditor Second Chance Auto, Inc.'s Claim 9. *In re Laney*, S.D. Ill. Bankr. Case No. 19-40789, Doc. 118. For the reasons set forth below, the Court **AFFIRMS** the bankruptcy court's order.

## Background

On or about June 13, 2019, Debtor Ryan Laney ("Debtor") entered into a Retail Installment Contract and Security Agreement ("Agreement") with Creditor Second Chance Auto, Inc. ("SCA") for the purchase and financing of a 2007 Ford Edge SEL (the "Ford Edge") (Doc. 4-1, p. 25). Under the parties' Agreement, Debtor agreed to pay the principal amount of $9,580.38 plus finance charges accruing on the unpaid balance at the rate of 22%, for a total sale price of $15,081.84, to be paid in seventy-two (72) bi-weekly installment payments beginning on June 27, 2019 (*Id.*).

1

On October 23, 2019, Debtor filed his Chapter 13 bankruptcy petition (Doc. 4, p. 2). SCA filed a proof of claim for the 2007 Ford Edge on November 20, 2019 ("Claim 3-1") (*In re Laney*, Claims Register, at 3-1). SCA asserted a claim amount of $12,122.00 (*Id.*).[1] On December 11, 2019, the Bankruptcy Court found that SCA's Ford Edge claim fell within the parameters of a "910-claim" under Section 1325(a), such that Debtor would be required to pay the claim in full under his Chapter 13 plan (*In re Laney*, Bk. Doc. 67, pp. 10-11)).

Debtor filed his Second Amended Chapter 13 Plan on March 2, 2020 (Doc. 4-1, p. 42). The Second Amended Plan was confirmed on March 24, 2020 (the "Confirmed Plan") (*Id.*). Section 4 of the Confirmed Plan treats SCA's Ford Edge Claim as a 910-claim that would be "paid in full, with interest". (Doc. 4-1, p. 43; Bk. Doc. 78, pp. 5-6). The Confirmed Plan listed an Estimated Claim amount for the Ford Edge as $12,112.00, with an interest rate of 7.25 percent, and an estimated monthly payment of $375.37 (*Id.*). In its entirety, Section 4(A) of the Confirmed Plan, provides:

> **4.**   *SECURED CLAIMS AND VALUATION OF COLLATERAL UNDER 11 U.S.C. SECTION 506*
>
> **A) Secured claims to which 11 U.S.C. Section 506 valuation is NOT applicable ("910 Claims"):**
>
> Claims listed in this subsection are debts secured by a purchase money security interest in a personal motor vehicle acquired for the personal use of the Debtor, incurred within 910 days preceding the date of the filing of bankruptcy, or debts secured by a purchase money security interest in any other thing of value incurred within one year preceding the date of the filing

---

[1] SCA filed an amended Claim 3 on December 20, 2019 ("Claim 3-2") which also asserted its Ford Edge claim in the amount of $12,112.00 (*In re Laney*, Claims Register at 3-2; Doc. 4-1, pp. 21, 45).

2

of the bankruptcy. These claims will be paid in full, with interest as provided below.

| Creditor | Collateral | Estimated Claim | Interest Rate | Estimated Monthly Payment |
|---|---|---|---|---|
| Second Chance Auto | 2012 Chrysler 300 | $10,870.00 | 7.25% | $336.88 |
| Chase Auto Finance | 2008 Chrysler Aspen | $500.00 | 7.25% | $15.50 |
| Second Chance Auto | 2007 Ford Edge | $12,112.00 | 25% | $375.37 |

(Doc. 4-1, p. 43; *In re Laney*, Bk. Doc. 78, pp. 5-6).

On March 9, 2020, and prior to confirmation, SCA filed a statement of attorney's fees (Doc. 4-1, p. 42). Debtor objected to these fees, and the hearings concerning this fee dispute continued past confirmation (*See generally*, *In re Laney*, Bk. Docs. 85-91; 96, 99-103). On July 27, 2020, the bankruptcy court directed SCA to file an amended proof of claim to add SCA's attorney's fees (Doc. 4-1, p. 42). SCA filed its amended proof of claim for the Ford Edge ("Claim 9") on August 7, 2020 (Doc. 41-1, p. 21). Claim 9 amended SCA's Claim 3 (*Id.*). Claim 9 asserted a claim for $15,584.46, itemized as:

Balanced owed on the Ford Edge, as of October 23, 2019:   $11,912.00;
Attorney's fees and costs incurred through March 9, 2020:   $1,929.86; and
Attorney's fees and costs incurred after March 9, 2020:   $1,742.60

(Doc. 4-1, pp. 21, 31). Debtor filed his Objection to Claim 9 on October 5, 2020 (Doc. 4-1, p. 2).

Following a hearing on November 23, 2020, the bankruptcy court overruled Debtor's objection to Claim 9 and Claim 9 was allowed (Doc. 4-1, p. 36). In overruling

Debtor's objection, the bankruptcy court found that the language in the Confirmed Plan provided for SCA's claim to be paid in full, that the relevant Agreement provided for the payment of SCA's attorney's fees, and the attorney's fees claimed by SCA's attorneys were reasonable and necessary (Doc. 4-1, pp. 44, 46-47). The court also reasoned that Debtor's counsel had knowledge of these attorney's fees prior to confirmation, and that compelling reasons existed to allow SCA to amend its original Claim 3 to include these fees (Doc. 4-1, pp. 45-46). The compelling reasons included that multiple events had occurred in the bankruptcy proceedings after SCA filed its original claim which required SCA to file responses and attend additional hearings to protect its claim (*Id.*).

Debtor timely filed his Notice of Appeal of the November 23, 2020 Order on December 7, 2020 (Doc. 4-1, p. 37). Debtor argues that Claim 9 should not have been allowed for four reasons: (1) SCA's Claim 9 operates as a post-confirmation amendment, effectively modifying the Confirmed Plan in violation of Section 1327(a); (2) SCA is not entitled to attorney's fees incurred post-confirmation; (3) the Bankruptcy Court wrongfully relied on *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993) when it permitted SCA to amend its claim to increase its claim after confirmation because *Holstein* is inapplicable to Chapter 13 cases; and (4) SCA's fees were unnecessary (Doc. 4). In response, SCA argues that its fees and Claim 9 were both properly allowed because (1) the fee request was filed before – and was under initial consideration – prior to confirmation, (2) Debtor knew that attorney fees were recoverable under the parties' Agreement, (3) the Confirmed Plan provided that SCA's claim would be paid in full, and (4) the fees incurred were reasonable and necessary (Doc. 10).

4

## Standard of Review

A federal district court has jurisdiction to hear appeals from the rulings of the bankruptcy court pursuant to 28 U.S.C. § 158.  This Court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law de novo.  *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017); *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010).  Evidentiary and discovery rulings are reviewed for abuse of discretion.  *In re Salem*, 465 F.3d 767, 778-79 (7th Cir. 2006).

## Analysis

Chapter 13 of the Bankruptcy Code affords a reorganization remedy for consumers with relatively small debts.  *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).  A debtor who qualifies for Chapter 13 relief may submit a plan of repayment that modifies the rights of their secured and unsecured creditors.  *See* 11 U.S.C. § 1322(b).  If the plan satisfies the requirements of 11 U.S.C. § 1325(a), the bankruptcy court will confirm it.  11 U.S.C. § 1325(a).  Once confirmed, the "provisions of the confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  11 U.S.C. § 1327(a).

On December 11, 2019, the Bankruptcy Court found that SCA's Ford Edge claim fell within the parameters of a "910-claim"[2] under 11 U.S.C. § 1325(a) such that Debtor would be required to pay the claim in full (*In re Laney*, Bk. Doc. 67, pp. 10-11).  Debtor

---

[2] "910 claims" refer to certain secured debts, including debts secured by a purchase money security interest in a personal motor vehicle acquired for the personal use of the Debtor, incurred within 910 days preceding the date of the filing of bankruptcy.  *See* 11 U.S.C. § 1325(a)(9).

does not dispute that SCA's Ford Edge claim is a proper 910-claim.  (*See* Doc. 4, p. 5).  And the Confirmed Plan treats SCA's Ford Edge claim as a 910-claim "to be paid in full" with interest.  (Doc. 4-1, pp. 42-43; *In re Laney*, Bk. Doc. 78).

For  Chapter 13 plans, a qualifying "910 claim" is not subject to the claim valuation process in Section 506 of the Bankruptcy Code, 11 U.S.C. § 506[3] by virtue of the "hanging paragraph of" Section 1325(a)(9).  *See* 11 U.S.C. § 1325(a)(9) ("section 506 shall not apply to a claim … if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle … acquired for the personal use of the debtor").  Therefore, in determining the treatment of "910-claims" under a Chapter 13 plan the parties look to "their contractual entitlements" as provided for in their security agreement.  *In re Wright*, 492 F.3d 829, 829 (7th Cir. 2007); *see also In re Howard*, 597 F.3d 852, 855-857 (7th Cir. 2010).

Here, the parties' security agreement, provides for the recovery of SCA's attorney's fees upon default:

> If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs and reasonable attorneys' fees as permitted by a court of law, that we incur to collect or enforce this Contract, and fees for repossession, repair, storage and sale of the Property securing this Contract.

(Doc. 4-1, p. 28).

---

[3] Generally, Section 506 permits debtors to bifurcate loans into secured and unsecured portions based on the current value of the collateral.   *See* 11 U.S.C. § 506; *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007) (describing the "cramdown" process, which allows Chapter 13 debtors to retain collateral by making monthly payments on the secured portion of the claim, while treating the unsecured portion in the same manner as other unsecured claims).

Further, SCA's purchase money security interest attaches to those attorney fees. The question of whether attorney's fees are included in SCA's purchase money security interest is a question of state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *In re Howard*, 597 F.3d 852, 855 (7th Cir. 2010); *Matter of Federal Press Co., Inc.*, 104 B.R. 56, 59 (Bankr. N.D. Ind. 1989) ("In bankruptcy proceedings, state law controls the construction and validity of ordinary contracts."). Here, the Agreement is silent on the governing state law that applies; however, Illinois law applies. *See In re Sumpter*, 171 B.R. 835 (Bankr. N.D. Ill. 1994) (citing *Butner*, 440 U.S. at 55-56).[4]

Like many states, Illinois has adopted Article 9 of the Uniform Commercial Code ("UCC"). *See* 810 ILCS § 5/9-615; *In re Wright*, 492 F.3d at 832. Under Article 9 a purchase-money security interest attaches to the collateral purchased and the "value given to enable" the purchase of the collateral. *In re Howard*, 597 F.3d at 855-856 (citing UCC §§ 9-103(a)(1), (b)(1)). The "value given to enable" the purchase includes obligations for expenses incurred with acquiring rights in the collateral (such as sales taxes and duties), and expenses of collection and enforcement (such as attorney's fees). *Id.* at 856. Accordingly, the Seventh Circuit has reasoned that if the debtor's promissory note provides for attorney's fee upon default, and default occurs, then the full claim secured by the purchase money security interest will also include the payment of those attorney's

---

[4] In the context of determining claims and property interests, the bankruptcy court is obligated to utilize choice of laws principles to determine which state's substantive law applies. *See In re Haake*, 483 B.R. 524, 529, f.t. 3 (Bankr. W.D. Wis. 2012). Here, the collateral is located in Illinois, the debtor is an Illinois resident, and the security agreement was executed in Illinois. *See In re Sumpter*, 171 B.R. 835 (Bankr. N.D. Ill. 1994).

7

fees. *Id.* at 856. In other words, debtor would be precluded from bifurcating the value of the collateral from the attorney's fees because the fees would be intertwined with and part of the value given to enable debtor to obtain ownership in the purchased vehicle. *Id.*

Here, because the parties' security agreement permits the recovery of SCA's attorney's fees, and SCA's purchase money security interest also attached to those fees, it stands to reason that in order for SCA's claim to be "paid in full" under the Confirmed Plan, the claim must include the payment of SCA's attorney's fees. Therefore, the bankruptcy court did not err in determining that SCA's fees were recoverable under the parties' security agreement.

Debtor's remaining issues concern the treatment of SCA's claim after confirmation. Specifically, Debtor argues that the bankruptcy court should not have allowed SCA to amend its claim after confirmation to include its attorney's fees, in part, because the claim amount differed from the estimated claim amount listed in the Confirmed Plan. Debtor contends that any claim amendment after confirmation effectively modified the Confirmed Plan in violation of the anti-modification provisions of 11 U.S.C. § 1327. *See* 11 U.S.C § 1327(a) ("the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has object to, has accepted, or has rejected the plan."). In sum, Debtor appears to take the position that the adjudication or valuation of SCA's attorney's fees should have occurred before or at confirmation of the Second Amended Plan, if at all.

Relevant here is a timing issue common in chapter 13 proceedings. *See In re Smith*, 2007 WL 1544366, at *4 (Bankr. E.D. Wis. May 29, 2007); *see also Matter of Wikowski*, 16 F.3d 739. 740-741 (7th Cir. 1994). Specifically, due to certain deadlines imposed by the Bankruptcy Code and Procedural Rules, Chapter 13 debtors are often required to file their Chapter 13 plan (and the plan may ultimately be confirmed) *prior* to the deadline for creditors to file proofs of claim. *See In re Smith*, 2007 WL 1544366 at *4.[5] Accordingly, claim objections are commonly resolved after confirmation. Here, in describing this timing issue, the bankruptcy court explained that the Southern District's form Chapter 13 plan provides for "estimated claim" figures "because, quite often, claims aren't even filed when the debtor files their plan." (Doc. 4-1, p. 43).

The Seventh Circuit has similarly explained this issue, reasoning that:

A [Chapter 13] bankruptcy plan basically sets forth an estimate of the total amount of money that the debtor owes creditors and the amount he can afford to pay them. The plan then establishes an estimated payment schedule which includes the monthly payments the debtor will make, the time period in which these payments will be paid, and the total percentage each creditor will receive on his claim. The payment schedule, however, is only an estimate. For various reasons, at the time that the bankruptcy plan is submitted the exact amount of allowable claims is unknown. For example, the amount of the claim may be in dispute; or a creditor may fail to file a timely proof of claim, as required by Rule 3002(a) to participate in a distribution under the bankruptcy plan. Once the allowable claims are established, the actual amount the debtor must pay may differ from the amount of estimated claims.

---

[5]*Compare* Fed. R. Bankr. P. 3015(b) (requiring Chapter 13 debtors to file their plan no later than fifteen (15) days after filing their bankruptcy petition) and 11 U.S.C. § 1324 (a confirmation hearing on debtor's plan must be held no later than 45 days after the meeting of creditors under Fed. R. Bankr. P. 2003) *with* Fed. R. Bankr. P. 3002(c) (nongovernmental creditors' claims are timely filed if they are filed no later than 90 days after the first setting for the meeting of creditors) and *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) (there is no statute or rule requiring a creditor to file a proof of claim prior to confirmation). Therefore, under certain circumstances, a creditor may timely file a proof of claim after confirmation of the Chapter 13 plan.

9

*Matter of Witkowski*, 15 F.3d at 740 (internal citations omitted); *in accord In re Gentry*, 621 B.R. 863, 867-868 (E.D. Wis. 2020) (distinguishing the claims-allowance process from the confirmation process, and finding that the resolution of a claim objection does not equate to challenging the validity of a confirmed plan's terms); *In re Waldschmidt*, 605 B.R. 860 (Bankr. N.D. Ind. 2019) ("Allowance and/or disallowance of claims is not part of the confirmation process. Claims do not need to be determined or objected to before the court confirms a plan. After the claims dust has settled and claims objections determined, if any adjustments need to be made, the confirmed plan can be modified.').

Also, relevant here, is the Southern District of Illinois' Chapter 13 Procedures Manual (hereinafter "Procedures Manual").[6] Debtor's Confirmed Plan specifically incorporates the provisions of the Procedures Manual into its terms. (*In re Laney*, Bk. Doc. 78, p. 1) ("The provisions of the Court's Chapter 13 Procedures Manual are incorporated herein by reference and made part of this Plan. This manual is available at *www.ilsb.uscourts.gov.*"). Paragraph 4(A) of Part Two of the Procedures Manual provides:

> **4)** *Secured Claims and Valuation of Collateral Under 11 U.S.C. § 506*
>
> **A)** *Secured Claims to which § 506 Valuation is NOT Applicable*
>
> The amount listed in the "Claim Amount" is the amount proposed by the Debtor in the Plan. If the actual allowed claim is different from the amount specified and the Trustee determines that the Plan will still complete as proposed, the Trustee shall pay the actual amount of the allowed claim without the need for an Amended Plan.

*Procedures Manual*, Part Two, 4(A), at pp. 21-22.

---

[6] The Chapter 13 Procedures Manual is available at
http://www.ilsb.uscourts.gov/sites/default/files/forms/13PlanInstruct_04-2017.pdf (last visited Sept. 9, 2021).

10

The bankruptcy court found that the eventual claim filed by SCA would establish "the exact amount" of SCA's claim. (*See* Doc. 4-1, pp. 44-45) ("The plan amount says it's based on an estimated claim. That's because we're often waiting for the real claim to be filed. The claim establishes the exact amount."). This finding is supported by the plain language of the Confirmed Plan, and particularly its use of the "estimated claim" amounts and the incorporation of the Procedures Manual. As such, the bankruptcy court did not err in allowing SCA's amended Claim 9 to establish the exact amount of SCA's Ford Edge claim even though the actual amount of the claim differed from the estimated claim amount listed in the Confirmed Plan. To that end, Plaintiff's argument that the amended Claim 9 operates as an unauthorized post-confirmation amendment to the Confirmed Plan is unpersuasive. *See Matter of Witkowski*, 15 F.3d at 740; *In re Gentry*, 621 B.R. at 867-868 (the resolution of a claim objection does not equate to challenging the validity of a confirmed plan's terms); *In re Waldschmidt*, 605 B.R. at 860 ("Claims do not need to be determined or objected to before the court confirms a plan. After the claims dust has settled and claims objections determined, if any adjustments need to be made, the confirmed plan can be modified.").

The bankruptcy court also did not err in finding that there were compelling reasons to permit SCA to file its amended Claim 9 or in applying the reasoning from *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). In *Holstein*, the Seventh Circuit observed the appropriateness of granting leave to file amendments to proof of claims in the context of a Chapter 11 case:

11

> Leave to amend should be freely granted early in a case, but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much....
>
> Confirmation of the plan of reorganization is a second milestone, equivalent to final judgment in ordinary civil litigation. Once that milestone has been reached, further changes should be allowed only for compelling reasons....

*Holstein*, 987 F.2d at 1270. Other bankruptcy courts have found this reasoning persuasive when considering amendments to proof of claims in Chapter 13 cases. *See In re Schroeder*, 607 B.R. 329, 336 (Bankr. E. D. Wis. 2019) (applying *Holstein* in a chapter 13 case); *In re George*, 426 B.R. 895, 899 (Bankr. M. D. Fla. 2010) (same). Further, the "disposition of a motion to amend a proof of claim falls within the sound discretion of the bankruptcy court." *In re Stavriotis*, 977 F.3d 1202, 1204 (7th Cir. 1992). Here, the bankruptcy court found the existence of compelling circumstances to permit SCA to file its amended claim, including that additional proceedings in the bankruptcy case required SCA's participation to protect its claim (*See* Doc. 4-1, pp. 47-48). Based on a review of the record, the bankruptcy court did not err in permitting SCA to file its amended Claim 9.

Finally, the bankruptcy court did not err in determining that SCA's fees were necessary and reasonable. Debtor argues that SCA's fees were not necessary because SCA's counsel's work was focused on researching the applicability of the codebtor stay under 11 U.S.C. § 1301 to this matter, but that SCA did not end up proceeding with its request to lift the automatic stay (*See* Doc. 4-1, pp. 28-30). Nevertheless, the bankruptcy court found that SCA's fees were necessary and reasonable in light of the ongoing

proceedings. Specifically, the court acknowledged that the fees were set at a reasonable rate, and the time entries supporting the fees corresponded with detailed work SCA's counsel submitted to the court (Doc. 4-1, pp. 46-48). The bankruptcy court also found that the fees were necessary in order for SCA to protect its claim. (Doc. 4-1, pp. 47-48) ("Second Chance's counsel had a duty to respond to all of these pleadings that are being filed by the Debtor. And when he files his responses, at least as -- of, Second Chance, by their documents, has the ability to recover attorney fees.").

In sum, a plain reading of the Confirmed Plan makes clear that the actual amount of SCA's 910-claim – which Debtor is to pay in full – could be determined post-confirmation via the claims allowance process without altering the treatment of the claim in the Confirmed Plan. Further, the parties' security agreement provides for the recovery of SCA's attorney's fees. As such, the Bankruptcy Court did not err in finding the existence of compelling circumstances so to allow SCA to file its amended Claim 9 and include its reasonable and necessary attorney's fees.

## Conclusion

The Bankruptcy Court's November 23, 2020 Order overruling Debtor Ryan Laney's objection to Creditor Second Chance Auto, Inc.'s Claim 9 is **AFFIRMED**.

**SO ORDERED.**

Dated: September 13, 2021

_____
DAVID W. DUGAN
United States District Judge